# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUPER 8 WORLDWIDE, INC., f/k/a Super 8 Motels, Inc., a South Dakota corporation, </br></br> Plaintiff, </br></br> v. </br></br> AMERICAN LODGING PARTNERS, INC., An Illinois corporation, VIVAK KHANNA, DHARAM VIR, and DESH MEHTA, </br></br> Defendants. | Case No. 08-CV-4514 </br></br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a 20-year license agreement entered into between Super 8 Worldwide, Inc. ("Plaintiff" or "Super 8") and American Lodging Partners, Inc. ("ALP") for the operation of a Super 8 motel in Calumet Park, Illinois. Defendants Vivak Khanna ("Khanna"), Desh Mehta ("Mehta"), and Dharam Vir ("Vir") each provided Plaintiff with a guaranty of ALP's obligations under the license agreement. Before the Court is Plaintiff's motion for partial summary judgment [51]. Plaintiff asks the Court to find that (1) ALP breached the license agreement and unlawfully displayed Plaintiff's various marks; (2) Khanna and Mehta each breached the guaranty; and (3) Plaintiff is entitled to damages, interest, and attorneys' fees and costs from ALP, Khanna, and Mehta.[1] For the following reasons, Plaintiff's motion [51] is granted.

**I.    Background**

The Court takes the relevant facts primarily from Plaintiff's Local Rule ("L.R.") 56.1

---

[1] Plaintiff was unable to serve Defendant Dharam Vir. Accordingly, Vir is not a subject of Plaintiff's motion for partial summary judgment.

statement of undisputed material facts [53]. No defendant has filed a response to Plaintiff's L.R. 56.1 statement or requested an extension of time from the Court in which to do so. Accordingly, the facts as set forth by Plaintiff are deemed admitted. See LR 56.1(b)(3)(C).[2]

Plaintiff Super 8 is a South Dakota corporation with its principal place of business in New Jersey. Plaintiff is one of the largest guest lodging facility franchise systems in the United States. Plaintiff does not own or operate any facilities—instead, all Super 8 facilities are independently owned and operated by franchisees. Plaintiff allows its franchisees to use Super 8's registered trade names, service marks, logos and derivations thereof (collectively, the "Super 8 Marks") pursuant to individualized license agreements with each franchisee.

ALP is an Illinois corporation located in Calumet Park, Illinois. Khanna is president of ALP and resides or transacts business in Chicago. Mehta is a part-owner of ALP and resides in Peoria, Illinois.

On November 30, 2004, Plaintiff entered into a license agreement with ALP for the operation of a 93-room motel in Calumet Park, Illinois (hereinafter "License Agreement" or "Agreement"). The Agreement had a 20-year term. The License Agreement permitted ALP to use the Super 8 Marks in connection with the operation and use of the motel. Pursuant to Section 7 and Schedule C of the License Agreement, ALP was required to make certain periodic payments to Plaintiff for royalties, service assessment, taxes, interest, reservations system user fees, annual conference fees, and other fees (collectively, the "Recurring Fees"). Under Section 7.3 of the Agreement, ALP agreed to pay interest at the rate of 1.5% per month (or the maximum

---

[2] The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Bordelon v. Chi. Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000) ("[W]e have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)).

rate permitted by applicable law, whichever was less) on past due amounts owed to Plaintiff under the Agreement.

Section 11.1 of the License Agreement specified the various ways in which ALP could be in default of the Agreement, which included failing to pay Plaintiff when a payment was due. Section 11.1 stated that if ALP's failure to pay was not cured within ten days after receiving written notice of the default, Plaintiff had the right to terminate the Agreement.

Section 13 specified ALP's obligations in the event the Agreement was terminated, including its obligation to immediately cease using all of the Super 8 Marks.

Section 12.1 of the Agreement provided that ALP would pay liquidated damages to Plaintiff within 30 days following the date of termination in accordance with a formula specified in the License Agreement.[3]  The liquidated damages in were to be "paid in place of our claims for lost future Recurring Fees under the Agreement." (License Agreement at § 12.1).  Pursuant to Section 17.4, ALP agreed that in the event that Plaintiff was required to take action to enforce the License Agreement, the non-prevailing party would "pay all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

Effective as of the date of the License Agreement, Khanna and Mehta provided Plaintiff with a guaranty of ALP's obligations under the License Agreement (the "Guaranty").  The one-half page, three-paragraph Guaranty provided in part that Khanna and Mehta would "jointly and severally * * * irrevocably and unconditionally * * * guaranty that [ALP's] obligations under the

---

[3] For facilities open less than 36 months, the applicable formula for calculating liquidated damages was: "the average monthly Royalties and System Assessment Fees since the Opening Date multiplied by 36" plus taxes and interest on such payment accruing from 30 days after the date of termination. Certain amounts were to be excluded from the amount of the System Assessment Fees in performing this calculation.  See Section 12.3.  Liquidated damages were not to be less than the product of $2,000 multiplied by the number of guest rooms in the motel (in this case, $186,000).

Agreement, including any amendments, will be punctually paid and performed." Upon default by ALP and notice by Super 8, Khanna and Mehta promised to "immediately make each payment and perform or cause [ALP] to perform each unpaid or unperformed obligation of [ALP] under the Agreement." Khanna, Mehta, and Vir each signed the Guaranty and the document was also signed by three witnesses.

On November 30, 2004, Plaintiff and ALP entered into an addendum to their agreement—the Satellite Connectivity Services Addendum (the "Addendum"). Pursuant to section 13(c) of the Addendum, ALP agreed that in the event of termination, it would pay damages to Plaintiff in the amount of $1,000 within 10 days following the date of termination.

On March 30, 2006, Plaintiff sent ALP a letter advising ALP that it was in default of the License Agreement by failing to pay Recurring Fees and other charges owed under the Agreement in the amount of $56,075.37. The letter enclosed an itemized statement detailing the fees past due. ALP was given 30 days to pay and was advised that failure to pay within that time could result in termination of the Agreement. Khanna, Vir, and Mehta also were copied on the letter.

On July 10, 2006, Plaintiff sent ALP a second letter, advising that ALP remained in default and now owed $100,784.44 under the Agreement. Plaintiff gave ALP an additional 30 days to pay and advised that this period was "a final opportunity to avoid termination." Khanna, Vir, and Mehta were copied on this letter as well.

On August 11, 2006, Plaintiff sent a third letter, advising ALP that the License Agreement had been terminated, effective August 11, 2006, because of ALP's continued failure to pay the amounts owed under the Agreement. The letter estimated that as of August 4, 2006, those fees equaled an estimated $118,156.28. The letter also advised that ALP owed

$216,788.40 in liquidated damages pursuant to the terms of the Agreement. The August 11, 2006 letter reminded ALP of its "post-termination obligations" including "removal of all items that display or refer to the Super 8 brand at the Facility" within 14 days of the date of the letter. Khanna, Vir, and Mehta were copied on the termination letter.

Following termination of the License Agreement, ALP continued to use the Super 8 Marks without authorization to induce the traveling public to rent rooms at the motel. ALP did not remove the Super 8 signage and continued to identify the motel as a Super 8 facility in response to telephone inquiries as to whether or not the facility was a Super 8 facility.

By letter dated February 14, 2007, Plaintiff reiterated ALP's post-termination obligation to cease use of all Super 8 Marks. Plaintiff informed ALP that pursuant to Section 13.2 of the Franchise Agreement, Plaintiff would be sending an independent contractor to the premises to removal all signage at and around the facility that bore the Super 8 Marks (the Agreement obligated ALP to reimburse Plaintiff for cost of the contractor's work). Plaintiff did in fact pay an independent contractor $1,500 to remove the signs from the facility.

On August 8, 2008, Plaintiff filed a seven count complaint against ALP, Khanna, Vir, and Mehta seeking damages and attorneys fees for breach of the License Agreement and for unauthorized use of the Super 8 Marks. As noted above, Plaintiff was unable to serve Defendant Vir. Defendants ALP, Khanna, and Mehta each have been represented by counsel over the course of this litigation, although Defendant Mehta currently is proceeding *pro se* [see 67]. Plaintiff filed the instant motion for partial summary judgment on April 23, 2010 [51]. The motion seeks summary judgment on Counts III, IV, V, VI, and VII only—Plaintiff's contract claims [see 52]. Plaintiff represents that if the Court grants summary judgment on these claims, Plaintiff will forgo its infringement claims. (*Id*. at 1 n.1). Only Mehta and Khanna filed

responses to Plaintiff's motion for summary judgment [68, 66].

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis[4]

### A. ALP Breached the License Agreement

As discussed above, Section 7 and Schedule C of the License Agreement required ALP to timely pay Recurring Fees to Plaintiff. There is no dispute that ALP failed to pay Plaintiff $113,131.44 of Recurring Fees owed under the Agreement. (Pl. SOF at ¶ 36). Section 11.1 of the License Agreement explicitly provides that failure to "pay us when a payment is due under this Agreement" would result in ALP being in default of the Agreement. Plaintiff asserts that it performed all of its obligations under the Agreement and no Defendant has challenged this assertion. Accordingly, the Court concludes that ALP breached the License Agreement.

Plaintiff first notified ALP that it was in default on March 30, 2006. Although Plaintiff was entitled to terminate the Agreement ten days after providing such notice, Plaintiff waited until August 11, 2006 to do so. The Court concludes that Plaintiff was entitled to terminate the Agreement pursuant to Sections 11.1 and 11.2, and that the termination was effected in accordance with those provisions.

It is also undisputed that Plaintiff continued to use the Super 8 Marks following the termination of the License Agreement. This unauthorized violated Section 13.1 of the

---

[4] The License Agreement contains a choice of law provision specifying that it will be governed by and construed under the laws of New Jersey. § 17.6.1. Defendant Mehta asserts that because he was not a party to the License Agreement, the choice of law clause is inapplicable to him and Illinois law should apply. Federal courts sitting in diversity must apply the choice-of-law rules of the forum state in which they sit. *Wildey v. Springs,* 47 F.3d 1475, 1480 (7th Cir. 1995); see also *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941). Recognizing the wisdom of the Seventh Circuit's advice that "'before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states,'" the Illinois Supreme Court has stressed that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears Roebuck & Co.,* 879 N.E.2d 893, 898 (2007) (quoting *Barron v. Ford Motor Co.,* 965 F.2d 195, 197 (7th Cir. 1992)). Mehta has not identified any difference between the laws of Illinois and New Jersey that would affect the disposition of the instant motion. In fact, it is clear to the Court that the outcome would be identical under the law of either jurisdiction. Accordingly, the Court will analyze the issues germane to this motion under both Illinois and New Jersey law.

Agreement, which required ALP to cease use of the Super 8 Marks following termination.[5]

As noted above, only Mehta and Khanna filed responses to Plaintiff's motion for summary judgment, and neither of the two defendants' briefs raises any challenge to the License Agreement whatsoever or disputes that ALP did in fact breach the Agreement. Again, ALP did not respond to Plaintiff's motion.

### B. Khanna and Mehta Breached the Guaranty

Plaintiff seeks to hold Mehta and Khanna personally liable for ALP's breach of the License Agreement through the Guaranty that they each signed. As discussed below, the Court agrees with Plaintiff and finds that the Guaranty is valid and enforceable; therefore, pursuant to the terms of the Guaranty each signed, Mehta and Khanna are jointly and severally liable for ALP's breach of the License Agreement.

In their responses, both Mehta and Khanna attempt to challenge the enforceability of the Guaranty. Khanna argues that the Guaranty is an unenforceable contract of adhesion; Mehta argues that (1) he received no consideration for signing the Guaranty, (2) Khanna and Vir defrauded and coerced Mehta into signing the Guaranty, and (3) holding him liable for ALP's breaches is unconscionable.

As an initial matter, Khanna and Mehta are precluded from raising any of the above arguments—each is an affirmative defense that Defendants have waived by not timely raising it

---

[5] Plaintiff's memorandum in support of its motion for summary judgment contains a section in which Plaintiff argues that in addition to breaching the License Agreement, ALP's post-termination use of the Super 8 Marks violated the Lanham Act (Pl. Mem. [52] at 5-7). The Court need not address these arguments for two reasons. First, Plaintiff's motion for summary judgment [51] and its memorandum both indicate that Plaintiff is "only moving for summary judgment on Counts III, IV, V, VI and VII"— Plaintiff's contract-based claims. Counts I and II of the Complaint [1]—the counts not subject to Plaintiff's motion—are the counts which allege violations of the Lanham Act. Furthermore, as noted above, Plaintiff represents that it will "forego its infringement claims" if the Court grants summary judgment on the contract-based counts. Because the Court does grant summary judgment in Plaintiff's favor on Counts III – VII, the Court sees no need to address Plaintiff's arguments based on violations of the Lanham Act.

earlier in this litigation.  Federal Rule of Civil Procedure 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  The purpose behind Rule 8(c) is to give plaintiff adequate notice prior to trial of the defenses that the defendant intends to assert.  *Fort Howard Paper Co. v. Standard Havens, Inc.,* 901 F.2d 1373, 1377 (7th Cir. 1990).  Failure to plead an affirmative defense results in a waiver of that defense.  See, *e.g. Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir. 1991).  However, failure to plead affirmative defenses in an answer only results in waiver of the defense if the plaintiff would be harmed as a result of the delay.  See *Curtis v. Timberlake,* 436 F.3d 709, 711 (7th Cir. 2005).  "Generally, such harm can be assumed when the affirmative defense is raised only after the close of discovery, such that the plaintiff is unable to adequately respond to its factual basis."  *Board of Trustees of Plumbers' Local Union No. 93 U.A. v. Encotech Const. Services*, 2010 WL 1994472, at *4 (N.D. Ill. May 14, 2010) (citing *Laborers' Pension Fund v. Dynamic Wrecking & Excavation, Inc.,* 2008 WL 4874110, at *7 (N.D. Ill. June 13, 2008) (plaintiff harmed when defendant raised affirmative defense of moral duress only in response to plaintiff's motion to summary judgment); *BMO Capital Mkts. Corp. v. McKinley Med. LLC*, 2007 WL 2757172, at *10 (N.D. Ill. Sept. 18, 2007) (plaintiff harmed when defendant raised affirmative defense of waiver after discovery closed)).

Mehta asserted no defenses whatsoever in the answer that he filed on October 20, 2008.  Khanna, through a stipulation filed by his counsel on December 23, 2009, affirmatively *withdrew* all of his defenses in order to avoid the need for Khanna to answer Plaintiff's discovery targeted at the affirmative defenses that Khanna had raised.

That a contract lacked consideration or was the product of fraud or duress are affirmative defenses that must be pled in a responsive pleading.  Fed. R. Civ. Proc. 8(c)(1).  Similarly, that a

9

contract is unconscionable or constituted a contract of adhesion are arguments that may be raised as affirmative defenses. *PPM Fin., Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1089 (N.D. Ill. 2004) (argument that a contract is one of adhesion may be raised as an affirmative defense); *Board of Trustees of Plumbers' Local Union No. 93 U.A. v. Enotech Const. Services, Inc.*, 2010 WL 1994472, at *7 (N.D. Ill. May 14, 2010) (unconscionability of a personal guaranty may be raised as an affirmative defense). To allow Defendants to raise these contractual defenses for the first time now, after discovery has closed, would deprive Plaintiff of the opportunity to conduct discovery as to these issues. It would be prejudicial to Plaintiff if Defendants were permitted to raise contractual defenses only at the late stage of responding to a motion for summary judgment. Moreover, as explained below, even if these affirmative defenses had not been waived, however, they would fail on their merits.

First, Khanna argues that the Guaranty "is an unenforceable contract of adhesion." (Khanna Resp. [66] at 1). As the Seventh Circuit explained in *Northwestern National Ins. Co. v. Donovan,* 916 F.2d 372, 377 (7th Cir. 1990), "widespread judicial suspicion of the form contract-the dreaded 'contract of adhesion,' the contract that is offered by the authoring party on a take it or leave it basis rather than being negotiated between the parties * * * [-]has never crystallized * * * in a rule making such contracts unenforceable, on grounds of fraud or duress or unconscionability or mistake or what have you, or even presumptively unenforceable. * * * Although the vagueness of the concept of unconscionability may seem to place contracts of adhesion under a cloud, they are generally upheld against attacks from that direction." Accordingly, even if the Guaranty was a contract of adhesion, it would not be presumptively unenforceable. However, the Court need not get that far—Khanna's argument fails because Khanna has failed to carry his burden of establishing that the Guaranty was in fact a contract of

adhesion. The "essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in standardized print form, without opportunity to negotiate except perhaps a few particulars." *Gross v. TJH Auto. Co.*, 881 A.2d 760, 769 (N.J. Sup. Ct. 2005); see also *Kinkel v. Cingular Wireless LLC,* 857 N.E.2d 250, 264-266 (Ill. 2006) (contracts of adhesion are typically (1) non-negotiable, (2) "presented in fine print in language that the average consumer might not fully understand," and (3) involve a disparity of bargaining power). Khanna offers no evidence to show that the Guaranty was non-negotiable. In his affidavit, Khanna testifies that the signing of the personal guaranty was "mandatory." However, there is no evidence in the record that the language of the Guaranty was entirely non-negotiable. Furthermore, the Guaranty—unlike other agreements criticized as contracts of adhesion—is not a long, complex or detailed agreement written in fine print or in language difficult or incapable of easy understanding. To the contrary, the Court finds that the one half-page, three-paragraph document is clear and eminently understandable, even to a layperson with no legal training.

Mehta's arguments are equally unpersuasive. First, Mehta argues that he received no consideration from Plaintiff for signing the Guaranty. This assertion is belied by Mehta's own brief (Mehta Resp. [68] at 3), in which Mehta admits that he is a part owner of ALP. Executing the Guaranty induced Plaintiff to award ALP—a company in which Mehta was part owner—a valuable 20-year contract to operate a Super 8 motel. As an ALP owner, Mehta stood to personally benefit from this arrangement. In any event, it is well settled under both Illinois and New Jersey law that a promise to benefit a third party (here ALP) constitutes sufficient consideration to bind the guarantor. See, *e.g. Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill. App. 1st Dist. 2007); *Great Falls Bank v. Pardo*, 622 A.2d 1353, 1359 (N.J. Sup. Ct. 1993).

11

Next, Mehta argues that Khanna and Vir defrauded and coerced Mehta into signing the Guaranty. Whether *Khanna* engaged in fraud is irrelevant to whether *Plaintiff* is entitled to enforce the Guaranty. In any event, Mehta has presented no evidence to support his "fraud" defense. Mehta only states in his affidavit that "it is my belief that Khanna and Vir had fraudulent intentions when obtaining my signature * * * [and] it is my sincerely held belief that factual misrepresentations were made by all other parties." Mehta does not identify any "factual misrepresentations" that the "other parties" purportedly made. Mehta also argues that Khanna, Vir, and Plaintiff had a "responsibility" to ensure that Mehta had read and understood ALP's obligations under the License Agreement before signing the Guaranty. The Guaranty clearly references the License Agreement. It was not Plaintiff's responsibility to ensure that Mehta had read the Guaranty and the License Agreement to which it referred. To the contrary, individuals are presumed to have read the documents to which they affix their signatures. See, *e.g., Dugan v. R.J. Corman R.R. Co.,* 344 F.3d 662, 667 (7th Cir. 2003) (noting that there is no "I didn't read it" defense to breach of contract); *Paper Express, Ltd. v. Pfankuch Maschinen,* 972 F.2d 753, 757 (7th Cir. 1992) (same).

Finally, Mehta argues that holding him liable for ALP's breaches would be unconscionable because (1) he was not an officer of ALP and could not direct its conduct, (2) he was not fully informed of the facts, and (3) "Khanna and Vir had intended to use the Personal Guaranty to make illegal gains." (Mehta Resp. [68] at 4). As an initial matter, Mehta has offered no evidence whatsoever to support his unconscionability defense. Mehta's argument fails for this reason alone. Regardless, it is not surprising that Mehta cites no authority to support his contention that lacking the power to direct the conduct of the obligor renders a guaranty unconscionable as a matter of law. If the law were so, parents who had co-signed

leases would be able to avoid paying their children's rent simply by asserting that they had no legal power to control their misbehaving offspring. In addition, Mehta does not identify what facts of which he was ignorant at signing or what "illegal gains" Khanna and Vir intended to make through the Guaranty. These vaguely-asserted statements are insufficient to allow Mehta to withstand summary judgment.

Defendants have identified nothing procedurally or substantively unconscionable about the Guaranty. To the contrary, Plaintiff has presented evidence that the Khanna and Mehta are highly educated and sophisticated parties (Mehta, a PhD, is a tenured engineering professor at Bradley University and Khanna is a sophisticated businessman involved in numerous ventures) who were capable of understanding the Guaranty that each signed. Finally, let us not forget that no one forced Khanna or Mehta to sign the Guaranty (or, for that matter to enter into the License Agreement). This situation is not one where Defendants had no other options but to contract with Plaintiff—If Mehta was uncomfortable with any of the terms of the Guaranty, he could have simply refused to sign.

Accordingly, the Guaranty is valid and enforceable. Pursuant to the terms of the Guaranty each signed, Mehta and Khanna are jointly and severally liable for ALP's breach of the License Agreement.[6]

### C. Amount of Damages

In addition to showing that ALP breached the Agreement and that Khanna and Mehta are liable for ALP's breach, Plaintiff has established that there is no genuine issue as to the amount

---

[6] Mehta claims that pursuant to a settlement agreement of May 2009 between himself and Vivak Khanna, Khanna, along with ALP "agree[d] to pay and to indemnify fully * * * appear and defend the Mehtas from and against any and all proceedings * * * [including] the claims brought by Super 8 Worldwide, Inc." [34]. Mehta may wish to attempt to enforce this Agreement against Khanna. However, the existence of an indemnity agreement between Mehta and Khanna has no bearing on Plaintiff's right to obtain a judgment against Mehta.

of damages to which it is entitled.

Plaintiff is entitled to **$113,131.44** in unpaid Recurring Fees. Exhibit 10 to Plaintiff's statement of undisputed material facts is an itemization of fees owed. No Defendant has challenged this amount. As explained above, Plaintiff is entitled to prejudgment interest on the unpaid Recurring Fees at the rate of 1.5% per month. Interest on unpaid fees running from August 11, 2006 (the date the Agreement was terminated) to April 23, 2010 (the date Plaintiff filed the instant motion) totals **$75,317.64**. Prejudgment Interest on the unpaid Recurring fees from April 24, 2010 through the date of this order totals **$15,398.04** (with interest accruing at a per diem rate of $55.79). No Defendant has challenged the contractual interest rate or the method Plaintiff used to calculate the interest owed.

Plaintiff is entitled to **$216,788.40** in liquidated damages.[7] "In Illinois, liquidated damages provisions will be found valid and enforceable when: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." *Fleet Business Credit, LLC v. Enterasys Networks, Inc.*, 816 N.E. 2d 619, 633 (Ill. App. 1st Dist. 2004); see also *Days Inn Worldwide, Inc. v. BFC Mgmt, Inc.*, 544 F. Supp. 2d 401, 406 (D.N.J. 2008) (same). No Defendant has challenged the appropriateness of the liquidated damages provision in the contract or the amount of liquidated damages claimed. As the liquidated damages provision, found at Section 12.1 of the Agreement is clear and unambiguous, the Court will enforce it pursuant to its terms. Interest on the unpaid liquidated damages running from September 10, 2006 (thirty days following termination) to April 23, 2010

---

[7] The $216,788.40 includes the additional $1,000 Defendants agreed to pay by entering into the Addendum.

(the date on which Plaintiff filed the instant motion) totals **$141,771.29**. Prejudgment Interest on the unpaid liquidated damages from April 24, 2010 through the date of this order totals **$29,642.40** (with interest accruing at a per diem rate of $107.40).

As discussed above, Section 17.4 of the Agreement requires Defendants to "pay all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." As Exhibit 12 to Plaintiff's statement of undisputed material facts, counsel has attached an affidavit for attorneys' fees and costs. Counsel for Plaintiff claims $35,169.60 in fees and $4,799.05 in costs related to the litigation. Counsel has not attached its billing statements, but has offered to provide them for the Court's *in camera* review. No Defendant has challenged these amounts. Absent any such challenge, and in light of the affidavit signed by counsel for Plaintiff and the Court's familiarity with this litigation, the Court is satisfied that the fees requested are reasonable. Accordingly, Plaintiff is entitled to **$39,968.65** in attorneys' fees and costs.

Finally, Plaintiff also has asked the Court to award postjugment interest pursuant to 28 U.S.C. § 1961. "Section 1961(a) of the Judicial Code entitles the prevailing plaintiff in a federal suit (including a diversity suit) to postjudgment interest at a rate fixed in the statute, whether or not there is an award of interest in the judgment, *Clifford v. M/V Islander,* 882 F.2d 12, 14 (1st Cir. 1989), or even a request for interest in the complaint. Fed.R.Civ.P. 54(c); 10 Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2664, at pp. 159-60 (2d ed. 1983)." *Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1104 (7th Cir. 1990). Because Plaintiff is entitled by statute to postjudgment interest, Plaintiff's request for the same is "superfluous." *Id*., see also *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir. 1994) (civil litigants who win money judgments in district courts are statutorily entitled to postjudgment interest, and

expressly awarding them such interest as part of judgment is redundant).

| Source of Obligation | Amount |
|---|---|
| Unpaid Recurring Fees | $113,131.44 |
| Prejudgment interest (1.5%) on unpaid Recurring Fees (through 4/23/2010) | $75,317.64 |
| Prejudgment interest (1.5%) on unpaid Recurring Fees (from 4/24/2010 through the date of Judgment) | $15,398.04 |
| Liquidated Damages | $217.788.40 |
| Prejudgment Interest (1.5%) on Liquidated Damages (Through 4/23/2010) | $141,771.29 |
| Prejudgment interest (1.5%) on unpaid Liquidated Damages (from 4/24/2010 through the date of Judgment) | $29,642.40 |
| Attorneys' Fees | $35,169.60 |
| Litigation Costs | $4,799.05 |
| **Total** | **$415,229.46** |

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment [51] is granted. Defendants ALP, Mehta, and Khanna are jointly and severally liable to Plaintiff in the amount of $415,229.46.

Dated: January 25, 2011

Robert M. Dow, Jr.
United States District Judge